**SHANKLIN et al. v. MOSELEY.　(No. 9647.)**

(Court of Civil Appeals of Texas. Dallas. June 19, 1926. Rehearing Denied Oct. 16, 1926.)

**1. Account** ⊙⟹20(1)—**Itemized statement in suit for accounting, controverted only by general denial and not being involved, held not to show necessity for appointment of master in chancery (Rev. St. 1925, arts. 2293, 2320).**

In suit for accounting, itemized statement of debits and credits not controverted further than by general denial and not being involved, *held* not to show necessity for appointment of a master in chancery, and hence order appointing master was properly rescinded, in view of Rev. St. 1925, arts. 2293, 2320.

**2. Reference** ⊙⟹35.

Appointment of a master in chancery, under Rev. St. 1925, arts. 2319, 2320, in cases where receivers are appointed, is to be confined to cases where services of a master, according to the rules of equity, are necessary.

---

⊙⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**3. Continuance ⊚⟹19—Evidence held to show lack of diligence to insure presence of one of plaintiffs at trial justifying denial of continuance.**

Evidence *held* to show lack of diligence to insure presence of one of plaintiffs at trial justifying denial of continuance for absence of such plaintiff, though master in chancery, dismissed before trial, had set date for hearing before him after date set for trial, but without vacating order setting trial date.

**4. Reference ⊚⟹33.**

Appointment of a master in chancery does not vacate orders theretofore entered by court, including an order setting case for trial, unless such order could not be observed without defeating purpose for which master was appointed.

**5. New trial ⊚⟹128(1).**

Facts to prove that presence of one of plaintiffs at trial would have affected verdict and judgment should be set out in motion for new trial based on refusal to grant continuance for absence of party.

**6. Action ⊚⟹45(4).**

Claim on note secured by vendor's lien on one of lots involved in suit on which defendant sought to foreclose lien for other indebtedness, *held* properly joined in action for accounting.

**7. Pleading ⊚⟹267.**

Exception to trial amendment to defendant's cross-bill, filed in response to act of court in sustaining plaintiff's exception to cross-bill, *held* properly overruled, where confined to matters involved in court's action.

**8. Account ⊚⟹18.**

In suit for accounting, evidence *held* to sustain direction of verdict for defendant and foreclosure of vendor's deed of trust acquired by defendant.

**9. Appeal and error ⊚⟹882(14).**

Submission of special issue identical to one requested by appellant, being an invited error, cannot be complained of by appellant.

**10. Judgment ⊚⟹707.**

Holder of note, secured by superior lien on property involved in suit for accounting, not made a party to suit is not precluded by judgment from enforcing rights existing prior to judgment.

**11. Appeal and error ⊚⟹1073(1)—Judgment providing that no other process shall issue or be enforced against plaintiff's wife creates no legal liability against wife, making error in rendering judgment against wife harmless.**

Judgment on defendant's cross-bill providing that it might be satisfied out of other property of plaintiff, but that no other process shall issue or be enforced against plaintiff's wife, created no legal liability against wife for payment of any portion of judgment, and hence error in rendering judgment against wife was harmless.

**12. Appeal and error ⊚⟹673(2).**

Foreclosure of lien on defendant's cross-bill against separate property of plaintiff's wife, *held* not shown to be error, in absence of evidence

that property, on which lien was foreclosed, was her separate property.

Appeal from District Court, Dallas County; T. A. Work, Judge.

Action by Frank M. Shanklin and wife against Annette Moseley. Judgment for defendant, and plaintiffs appeal. Affirmed.

Clark & Clark, K. Van Slycke, and John F. Murphy, all of Dallas, for appellants.

K. R. Craig, of Dallas, for appellee.

VAUGHAN, J. On January 15, 1924, appellee instituted against appellants, Frank M. Shanklin and wife, Carrie M. Shanklin, an action of trespass to try title to two tracts of land situated in the city and county of Dallas, state of Texas, first tract being lot 5, block 637, and second tract being lot known as No. 2917, Bowser avenue, and a part of block 637, according to the Murphy & Bolanz official map of the city of Dallas; said trespass to try title suit was numbered 50369, and styled Annette Moseley v. Frank M. Shanklin et al., on the docket of the trial court.

On March 17, 1924, appellants filed in that suit their answer, cross-action, and application for the appointment of a receiver, in which appellants admitted that they had received loans of money on different dates and in various sums from appellee, for which they were indebted, aggregating about $4,500, and alleging that said money was borrowed from appellee on account of and for part purchase money on the following described real estate: Lot and improvements located thereon at 3602 Noble street; lot and improvements thereon located at 2917 Bowser avenue; and the lot and improvements thereon located at 2918 Lemmon avenue—all in the city and county of Dallas, state of Texas. They sought an accounting by appellee to appellants for the amount of rents collected by her on account of said properties, alleged to be approximately $1,500.

On November 18, 1924, appellee answered said cross-action by appropriate pleas which will not be discussed, as same were supplanted by appellee filing her third amended original answer and cross-action on February 23, 1925, which contained a full statement of all items of debt asserted by appellee against appellants, and all items collected as rents from the properties involved, and other sums of money admitted to have been received by appellee as items of credit in favor of appellants. Further presentation of this amendment is unnecessary, as same will be fully reflected in the discussion of the issues herein.

On the 3d day of December, 1924, on exception of appellee being sustained to appellants' cross-action, as filed in the trespass to try title suit, said cross-action seeking an

---

⊚⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

accounting was severed from said suit and ordered filed, as a separate and independent suit by appellants as plaintiffs against appellee as defendant, to be numbered and styled on the docket of the trial court as No. 50369½, Frank M. Shanklin et al., v. Annette Moseley.

The receiver appointed in this cause March 22, 1924, filed his application on February 24, 1925, for the appointment of a master in chancery, which motion, on an ex parte hearing, was granted on the day filed, and Hon. W. A. Hudson appointed to that position.

A trial of said cause No. 50369½ was had to a jury on the 3d day of March, 1925, which resulted in a judgment in favor of appellee against appellants for the sum of $8,905.78, with the foreclosure of vendor's deed of trust and contract liens to secure the payment of all of said sum, except $138.04 thereof on the following property situated in the city and county of Dallas, state of Texas, and designated according to the official map of the city of Dallas as follows: First tract—a part of lot 7 in block 637, and being the same property conveyed to appellee by appellants by deed dated November 22, 1923, recorded in volume 1057, page 93, of the deed records of Dallas county, Tex.; second tract—all of lot 1 in block 3 of Middleton Brothers' Oak Grove addition to the city of Dallas. The verdict, on which the judgment was rendered, was returned under direction of the trial court.

[1] Appellants' first assignment of error and propositions embracing same challenge the order entered on application of appellee discharging the master in chancery appointed in this cause. The order appointing the master was entered after appellee had filed her cross-action containing an itemized statement of the debits and credits involved in the accounting sought by appellants. The statement contained the respective dates and amounts of the several sums of money claimed by appellee to have been furnished and advanced by her to appellants, as well as the dates and amounts of the credits that appellee admitted appellants were entitled to. Appellants did not controvert this itemized statement further than by their general denial. Appellee's statement of the several transactions between her and appellants did not present an involved statement of any transaction or a long drawn out course of dealings between the parties, such as would require the services of a master in chancery to pass upon, in order that the court in trying the case would not be unnecessarily delayed in passing upon many controverted items; and it did not present, for the determination of a master in chancery, any material matters in dispute between the parties in reference to the account that could not be readily submitted to and determined by the court, in the due course of the trial of the cause. No necessity existing for the appointment of a master, there was certainly no error in the action of the court in rescinding the order appointing him. 10 R. C. L. 510, par. 291, 292; Texas Revised Civil Statutes of 1925, arts. 2293 and 2319.

[2] Appellants' contention in this respect is based upon the language of the article providing for the appointment of a master in chancery; viz, "shall in every case appoint a master in chancery." Article 2320. Without the existence of a necessity therefor, it is not to be assumed from this language that the Legislature intended for a master in chancery to be appointed in every case where a receiver was appointed, regardless of whether or not there existed a necessity for the services of such an officer to make an orderly disposition of the cause. Evidently, the Legislature had in mind the application of the rules of equity and the usages in equity in the matter of appointment of receivers and masters in chancery when this act was adopted. For instance, throughout the act the usages in equity and the rules in equity are referred to and made the governing consideration in the administration of the law. The first article of the act, after enumerating the many cases in which receivers may be appointed, says, "In all other cases where receivers have heretofore been appointed by the usages of the court of equity."

In article 2319, supra, next preceding the one providing for a master in chancery, the statute provides:

"In all matters relating to the appointment of receivers, and to their powers, duties and liabilities, and to the powers of the court in relation thereto, the rules of equity shall govern whenever the same are not inconsistent with any provision of this chapter and the general laws of the state."

We think the proper construction of this section of the statute with reference to the appointment of a master in chancery, when construed in connection with the rest of the act, to mean and be confined to such cases wherein, according to the rules of equity and the usages of equity, the services of a master in chancery are required. As stated in 10 R. C. L. par. 291, the rules and usages in equity in such cases are as follows:

"Inasmuch as references are ordered merely as an aid and assistance to the court, a reference is not necessary and may be dispensed with in any case where the court can get along well enough without it. A reference will not be ordered, even in a matter of accounting, where the transaction to be considered is short and in no respect complex, and it is ordinarily within the discretion of the court, if for any reason it deems it proper to do so, to state the account itself after an examination of the testimony. Questions fit for reference will be determined by the court itself, without a reference, whenever it can conveniently do so with the saving of time and expense."

In this case, it was simply a matter of debits and credits, all plainly set out and itemized in appellee's statement, with no complications whatever—none of the items being disputed specifically, nor any issue raised by the pleadings with reference to any matter except by a general denial—and the only matter that was submitted to the court, upon which the master in chancery could have passed, was the testimony in support of the several items of said account. This assignment and the propositions based thereon are overruled.

[3] Appellants, by their second assignment of error and propositions thereon, earnestly contend that the court erred in refusing to grant their application for a continuance. This cause, by proper order entered on or about February 2, 1925, had been set for trial for March 2, 1925. On the 24th day of February, 1925, the trial court, on the application of the receiver in this cause, appointed a master in chancery. The order appointing said master in chancery, in part, contains the following provision:

"And this case is hereby referred to him, for a hearing and accounting and his report to this court, and to that end he will take all necessary evidence as in open court, and with the powers of the court, and upon the pleadings filed in the case, and by the oral testimony and evidence, including books and accounts, * * *" etc.

This appointment was made without notice to appellee or her attorneys.

On the 26th day of February, 1925, Hon. W. A. Hudson, the master in chancery appointed by the trial court, issued notice to the parties advising them of his appointment, and notifying them to appear before him at his office, 410 North Texas Building, in the city of Dallas, on the 24th day of March, 1925, at 9 o'clock, a. m., to make their defenses and full accounting in said cause, in accordance with the order of the court appointing him master in chancery therein. On the 26th day of February, 1925, appellee filed her motion to vacate said order, which application was heard and granted on the 28th day of February, 1925, the appellants being present through their counsel at said hearing.

On the 3d day of March, 1925, said cause was called for trial in the court below, and appellants then presented their motion for a continuance on account of the absence of appellant Frank M. Shanklin, whose testimony was alleged to be material, as follows:

"And Frank M. Shanklin is a material witness in this case, and, in fact, the only witness to the many matters involved in the defendant's five pages of accounting herein involving many loans of money to him by the defendant. That her said accounting is full of errors, and claims a sum far in excess of the actual amount due the defendant by Frank M. Shanklin; that he is the only witness informed and knowing such facts, and his presence at the trial of this case is absolutely necessary."

[4] Frank M. Shanklin was in Dallas county at the date the order was entered appointing the master in chancery, but left soon thereafter for Meadville, Pa., to attend to some alleged important business. In leaving, he assumed that the order setting the case for March 2d was rescinded by the order of the master in chancery setting the hearing to be had before him for March 24, 1925, without ascertaining from the trial judge whether or not he would permit the setting of the case for trial for March 2, 1925, to be vacated by the act of the master in chancery setting the date for the hearing to be had before him for March 24, 1925. The order appointing the master was entered on the 24th day of February, 1925, about five days before the date on which the case was set for trial. So far as the record shows, the master in chancery assumed to set the hearing to be had before him in conflict with the date for which the case had been set for trial without consulting the trial judge, which was undoubtedly acquiesced in by counsel representing appellants, and without notice to appellee, either of the appointment of the master in chancery or of the date that the master had fixed for the hearing before him, until she received the notice from the master advising her of said orders. The appointment of a master in chancery does not of itself vacate any order theretofore entered by the court in the cause for which the master was appointed. This includes an order setting a case for trial, unless from the very nature, character, and extent of the work to be performed by the master, the order setting the case for trial could not be observed without defeating the very purpose for which the master was appointed.

In this case, it is apparent, from the record, that a hearing of the matters which the court submitted to the master could have been had in one or two days—in ample time for the trial of the case to take place on the date set. The absence of appellant Frank M. Shanklin from the trial of the case, on the grounds alleged, shows lack of diligence on his part to be present at the trial and want of diligence on the part of his coappellant to have him in attendance on the trial of the case to testify therein. The application itself shows that appellant Frank M. Shanklin had ample time after the rescinding of the order appointing the master in chancery to have returned from Pennsylvania and to have been in attendance on court, when the case was called for trial. It further shows that appellants' attorney, in fixing the date in his wire to Frank M. Shanklin for him to return, of his own volition relied on the probability of other cases being called and tried before this case would be reached, and, upon that reliance, fixed the 4th of March

as the date that said Shanklin should appear for the trial of this cause instead of the 2d of March, the date set for the trial. Said application further shows that Shanklin, by his wire, plainly indicated that he could be in court on the 4th of March; that the case was still on trial on the 4th of March, and was not submitted to the jury until the 5th of March. The record shows that there was no issue made by appellants' pleadings under which said Shanklin could have testified to anything material.

[5] The amended motion for a new trial, although not filed until April 10, 1925, sets up no facts which could have been proved by Frank M. Shanklin, had he been present at the trial, which would have affected the verdict and judgment in any respect. Such facts, if any, should have been set out in the motion in order that the trial court would have been given the opportunity to determine whether any injustice had been done the appellants, and, if so, correct same. The court did not err in overruling said motion, and appellants' assignment and propositions relating thereto are overruled.

[6] Appellants' third assignment of error and propositions based thereon claim that there was a misjoinder of causes of action, because appellee declared on the note executed by appellants to Mrs. Myrtle Kate Blackeney, which note was secured by vendor's lien on one of the lots involved in the suit on which appellee sought to foreclose liens asserted by her to secure other indebtedness. Appellee being the owner and holder of the Blackeney note, and the cause of action involving an accounting between the parties to ascertain the amount of the indebtedness due by appellants to appellee, she not only had the right to join said note in the suit, but, had she failed to do so, a sale under foreclosure of the other liens asserted by her on the property would have, as against a purchaser at such sale, barred her right to have the same property resold under subsequent foreclosure proceedings based upon the vendor's lien existing to secure the payment of said Blackeney note. Alston v. Piper, 34 Tex. Civ. App. 589, 79 S. W. 357. Said assignment and propositions thereunder are overruled.

[7] Appellants complain of the action of the trial court in overruling their special exception to appellee's trial amendment to her cross-bill. The exception is based on the ground that said trial amendment repeated the whole of appellee's cause of action stated in the first ground in her cross-bill for the recovery of many items aggregating $4,134.-16. The amendment was filed in response to the action of the court in sustaining appellants' special exception to appellee's cross-bill. While the trial amendment is quite lengthy, yet same is confined to the matters that were involved in the effect of the court's action in sustaining appellants' said exception. The amendment accomplished the purpose for which it was filed; viz., to meet the ruling of the court in sustaining said exception. The assignment is directed more to the form of the amendment than to the legal effect of same as bearing upon the issues to be determined by the parties. We do not think there is any merit in appellants' contention, and said assignment is overruled.

[8] Appellants' fifth assignment of error and propositions thereunder complain of the court's action in directing a verdict for appellee. The following undisputed facts, we think, left the trial court without any other course to pursue. On or between the dates of August 27, 1923, to March 31, 1924, appellee advanced to, and paid out for, the use and benefit of appellants different sums of money, aggregating $4,134.16. That in a partial accounting had between appellants and appellee on or about November 22, 1923, the indebtedness of appellants to appellee was estimated at $3,300. Appellants executed their note for said sum of $3,300 under date of November 1, 1923, payable to appellee or order one year after date, with interest at the rate of 8 per cent. per annum, and containing the usual 10 per cent. attorney's fee clause. That, to secure the payment of said note, a contract lien was created by deeds of date November 22, 1923, on the hereinafter described real estate; that the amount of said note, to wit, $3,300, was placed as a credit on the total amount of said advances, leaving a balance of $834.16 due, of which balance the sum of $631.92 was secured by a valid equitable lien on the hereinafter described property, leaving of said balance the sum of $138.04 unsecured by any lien. That said note in the sum of $3,300, with interest thereon from date and attorney's fees, remained due and unpaid at the time judgment was rendered thereon. The liens, as same were foreclosed to secure the payment of said several sums of money, existed on the following described property: First tract—lot 7 in block 637, according to the official map of the city of Dallas, Tex.; second tract—lot 1, block 3 of Middleton Brothers' Oak Grove addition to the city of Dallas. That on the 30th day of July, 1923, appellants, and one Vern E. Shanklin, for a valuable consideration, executed and delivered to Mrs. Myrtle Kate Blackeney their certain promissory note for the sum of $3,266.62, payable to Mrs. Blackeney or her order in monthly payments of $100 each, with interest at 8 per cent. per annum from date. That to secure the payment of said note, appellants and said Vern E. Shanklin executed and delivered to one R. L. Stennis a deed of trust conveying in trust to said Stennis, as trustee, the above two described tracts of land, together with two other tracts of land on which foreclosure was not sought. That in due course, and for value, appellee acquired said note and the right to enforce and foreclose the deed of trust lien existing on the above-described

property to secure the payment of same. That default was made in payment of installments due on said note by reason of which appellee declared same due and payable, and the principal of said note, with interest and attorney's fees thereon, was due and unpaid when judgment was rendered.

Appellee acquired said note executed by appellants, payable to Mrs. Myrtle Kate Blackeney, for her own use and benefit, and not as the agent of or for the use and benefit of appellants or either one of them. That Vern E. Shanklin was only a surety on said note, and at the time of its execution did not have, or at any time thereafter acquire, any interest in the land involved in this suit; therefore he was not made a party defendant to the suit on account of said note. We think the judgment of the court is not subject to the criticism, in that no other judgment, under the undisputed facts, could have been properly rendered than the one appealed from.

[9, 10] By said fifth assignment, appellants also question the action of the court in submitting the following special issue; viz, Was the Spurgin $2,500 note paid off and discharged by Frank M. Shanklin? This issue had reference to a note in the sum of $2,500 executed by appellants, payable to the Spurgin Investment Company, and secured by a superior lien on the property on which lien was foreclosed on account of the Blackeney note. Appellants based their assignment on the ground that the holder of the note, Mrs. Margaret Welch, was not a party before the court. The submission of this identical issue was also requested in practically the same language by appellants; therefore, this being an invited error, if error at all, appellants are not in position to urge error on account of the submission of said issue. Furthermore, the holder of the note, if same has not been paid off, not being a party to the suit, is not in any respect bound or precluded by the judgment from enforcing whatever rights existed prior to the rendition of the judgment, and which were valid and subsisting rights at the time the judgment appealed from was rendered, as the rights of the holder of the Spurgin note can be adjudicated without reference to the judgment rendered in this case. Therefore said assignment is overruled.

Appellants' sixth, seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, and sixteenth assignments of error complain of the action of the court in refusing to submit to the jury certain special issues requested by appellants. The issues requested had no place in the case since the evidence, as above indicated, required the rendition of the judgment appealed from. Said assignments are therefore overruled.

[11] Appellants' twenty-second assignment of error complains of the entry of judgment for the debt against appellant Carrie M. Shanklin. This assignment would have to be sustained but for the character of judgment rendered, which destroys entirely the effect of the judgment for debt against this appellant. The judgment contains the following provision:

"In the event said properties should not bring enough to satisfy this judgment, then the officer shall proceed to make the same out of any other property of F. M. Shanklin. But no other process shall issue or be enforced against Carrie M. Shanklin."

No legal liability was created against Carrie M. Shanklin for the payment of any portion of the judgment for the debt against appellants. Therefore as entered, conceding the judgment to be erroneous in so far as being against Carrie M. Shanklin for the debt for which the judgment was rendered, same, by virtue of the above provision, was nullified to such an extent as to become harmless error. Said assignment is therefore overruled.

[12] Appellants' twenty-third assignment of error asserts that the court committed error in foreclosing liens on the separate property of Carrie M. Shanklin. This assignment is not well taken for the reason that there is not disclosed by the statement of facts any evidence establishing in the slightest that any of the property involved in this suit, on which the lien was foreclosed by the judgment rendered, was, in fact, the separate property of said Carrie M. Shanklin, nor that any of the money paid in the purchase of same was the separate means of said appellant nor that she had any separate property which was or could have been so applied. Especially is this true, as between said appellants and appellee, with reference to her right to the judgment foreclosing the liens on the property claimed by appellant Carrie M. Shanklin as her separate estate; for, notwithstanding the fact that said property could, as between appellants, be the separate property of the said Carrie M. Shanklin, yet as between appellants and appellee, in reference to the foreclosure of the lien as determined by the judgment, no separate estate existed in favor of the said Carrie M. Shanklin.

In the light of the conclusions reached on the assignments discussed, the remaining assignments present no matter requiring discussion necessary to the disposition of this appeal, and are therefore overruled as being without merit.

We are of the opinion that this cause should be affirmed, and it is so ordered.

Affirmed.